IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**KELZIE LEWIS**                                                                                               **PLAINTIFF**

v.                           Case No. 4:18-cv-00143-KGB

**PULASKI COUNTY SHERIFF'S OFFICE,**
*et al.*                                                                                                        **DEFENDANTS**

**OPINION AND ORDER**

Plaintiff Kelzie Lewis brings this lawsuit[1] against Pulaski County, Arkansas ("Pulaski County") and two John Doe defendants[2] pursuant to the Arkansas Civil Rights Act, Ark. Code

---

[1] Mr. Lewis filed his complaint on February 20, 2018 (Dkt. No. 1). On July 19, 2018, Mr. Lewis filed an amended complaint (Dkt. No. 12). On February 13, 2019, the Court *sua sponte* granted a Rule 12(e) motion directing Mr. Lewis to file a second amended complaint within 21 days from the entry of the order that addressed the matters raised in the Order (Dkt. No. 24). On March 6, 2019, Mr. Lewis filed a second amended complaint (Dkt. No. 25). Therefore, the Court recognizes the second amended complaint as the operative complaint. On December 19, 2019, the Court dismissed without prejudice Mr. Lewis' complaint, amended complaint, and second amended complaint as to defendants Arkansas Department of Correction ("ADC"), Pulaski County Sheriff's Office ("PCSO"), and Pulaski County Regional Detention Facility ("PCRDF"), dismissing those entities as defendants in this case (Dkt. No. 39). The Court dismissed Mr. Lewis' claims against Pulaski County to the extent those claims were premised on *respondeat superior* liability, but the Court permitted Mr. Lewis to proceed with his failure-to-train type claims and remaining claims against Pulaski County and to proceed with his claims against the John Doe defendants (*Id.*).

[2] Mr. Lewis names as defendants John Does 1 and 2 (Dkt. No. 25). At no time since the filing of his operative amended complaint has Mr. Lewis moved to amend to name the John Doe defendants nor has Mr. Lewis filed proof of service of the operative amended complaint on any John Doe defendant. By separate Order, the Court directed Mr. Lewis to show good cause for his failure to identify or serve the John Doe defendants to date (Dkt. No. 58). Mr. Lewis has not made the requisite showing. As a result, the Court dismisses without prejudice Mr. Lewis's claims against the unidentified John Doe defendants. *See* Fed.R.Civ.P. 4(m) (if service of summons and complaint is not made within 120 days of filing complaint, court, upon motion or its own initiative and after notice to plaintiff, shall dismiss action without prejudice as to that defendant, or direct that service be effected within specified time); *Edwards v. Edwards*, 754 F.2d 298, 299 (8th Cir.1985) (per curiam) (if plaintiff fails to serve party and does not show good cause for failing to do so, court shall dismiss action).

Ann. § 16-123-101, *et seq*. ("ACRA") and 42 U.S.C. § 1983 (Dkt. No. 25).  Mr. Lewis alleges that Pulaski County failed to provide him adequate medical care during his incarceration at the Pulaski County Regional Detention Facility ("PCRDF") in 2014 and 2015.  Mr. Lewis also alleges that Pulaski County failed to train properly its employees and that he was subjected to excessive force and unreasonable seizure.

Before the Court is the motion for summary judgment filed by Pulaski County (Dkt. No. 44).  Mr. Lewis filed a response in opposition to the motion for summary judgment (Dkt. No. 53), and Pulaski County replied (Dkt. No. 54).  For the reasons that follow, the Court grants Pulaski County's motion for summary judgment (Dkt. No. 44).

I.  **Factual Background**

Unless otherwise noted, the following facts are taken from Pulaski County's statement of undisputed material facts and Mr. Lewis's response to Pulaski County's statement of undisputed material facts (Dkt. Nos. 46, 52).[3]

On July 2, 2013, Mr. Lewis was charged with terroristic threatening in the first degree (Dkt. No. 46, ¶ 1 (citing *State of Arkansas v. Kelzie Lewis*, 60CR-13-2120 Docket Sheet)).[4]  On July 9, 2014, Mr. Lewis was arrested for failure to appear in 60CR-13-2120, and booked into PCRDF (*Id.*, ¶ 2).  On December 16, 2014, while still an inmate at the PCRDF, Mr. Lewis pleaded guilty to

---

[3] Pursuant to Local Rule 56.1(c) of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas, "[a]ll material facts set forth in the statement filed by the moving party. . . shall be deemed admitted unless controverted by the statement filed by the non-moving party. . . ."  The material facts set forth in Pulaski County's statement that Mr. Lewis did not controvert are deemed admitted by the Court.

[4] Mr. Lewis maintains that his former charges are not material to the resolution of this case (Dkt. No. 52, ¶ 1).  The Court agrees with Mr. Lewis, to the extent that these former charges do not inform the Court's analysis regarding the alleged constitutional violations and claims discussed in this Order

2

terroristic threatening and was sentenced to three years imprisonment at the Arkansas Department of Corrections ("ADC") (*Id.*, ¶ 3). From the day he was booked into PCRDF on July 9, 2014, until his guilty plea on December 16, 2014, Mr. Lewis was a pre-trial detainee (*Id.*, ¶ 4). From December 16, 2014, until he was released to the ADC on February 5, 2015, Mr. Lewis was a post-conviction inmate (*Id.*, ¶ 5).

Pulaski County has policies and guidelines in place to ensure the provision of healthcare services to inmates confined at the PCRDF (*Id.*, ¶ 6). All deputies at the PCRDF receive training including, but not limited to administration of first aid, recognizing the need for emergency care in life threatening situations, recognizing acute manifestations of chronic illnesses, and methods of obtaining medical assistance and referring inmates to health professionals (*Id.*, ¶ 7).

Prior to December 2016, the Pulaski County Sheriff's Department ("PCSO") contracted with Carl Johnson, M.D., a licensed physician, to serve as the Medical Director at the PCRDF (*Id.*, ¶ 8). To ensure medical autonomy, judgments regarding an inmate's healthcare needs were the sole responsibility of Dr. Johnson (*Id.*, ¶ 9). Decisions and actions regarding the healthcare services provided to inmates were the sole responsibility of qualified healthcare personnel, and under the Sheriff's policies, only qualified healthcare personnel may evaluate and care for patients (*Id.*, ¶¶ 10-11).[5] When an individual is booked into the PCRDF, he or she goes through a receiving medical screening performed by qualified healthcare personnel (*Id.*, ¶ 12). During intake screening a nurse assesses each inmate to determine if they meet special needs criteria (*Id.*, ¶ 13).

---

[5] Mr. Lewis denies any implication that Pulaski County had no power to control its medical personnel or medical contractors (Dkt. No. 52, ¶ 2). According to Mr. Lewis, such an implication "requires the resolution of an ultimate question of law and fact that is most appropriate for the fact finder in this case" (*Id.*).

On March 26, 2014, prior to his confinement at the PCRDF, Mr. Lewis presented to Baptist Health Medical Center for treatment of shoulder and rib pain resulting from a motorcycle accident two days prior (*Id.*, ¶ 14). Dr. Wendell Pahls ordered x-rays for Mr. Lewis's right shoulder and right chest (*Id.*, ¶ 14). The x-rays indicated no fractures (*Id.*). The final diagnosis was "congenital deformity of clavicle" and "sprain and strain of unspecified site of shoulder and upper arm" (*Id.*, ¶ 16). Dr. Pahls prescribed an arm sling and Percocet and discharged Mr. Lewis for "home/self care" (*Id.*, ¶ 17).

On July 9, 2014, during his intake screening at the PCRDF, Mr. Lewis reported that he did not have any medical problems or injuries requiring immediate medical attention (*Id.*, ¶ 18). During pill call on July 12, 2014, Mr. Lewis advised a nurse that he was having trouble breathing on one mattress due to pain related to collarbone displacement (*Id.*, ¶ 19).[6] The nurse called Dr. Johnson, who referred Mr. Lewis to University of Arkansas for Medical Sciences ("UAMS") for treatment for "dislocated shoulder" (*Id.*, ¶¶ 20-21).

On July 12, 2014, Mr. Lewis was transported to UAMS (*Id.*, ¶ 22). The provider at UAMS diagnosed Mr. Lewis with "injury of right clavicle," prescribed him tramadol, and instructed him to schedule a follow-up appointment with an orthopedist as soon as possible (*Id.*, ¶ 23). UAMS did not perform any x-rays on Mr. Lewis (*Id.*, ¶ 24). Dr. Johnson approved the tramadol prescription the same day (*Id.*, ¶ 25). PCRDF Progress Notes from July 15, 2014, indicate that Mr. Lewis went to UAMS, the visit revealed "no new problems," and that he should return to the clinic in one month (*Id.*, ¶¶ 26-27).

---

[6] Pulaski County represents that the report was mistakenly dated July 13, 2014 (Dkt. No. 46, ¶ 19 n.1).

On July 15, 2014, Dr. Johnson prescribed Mr. Lewis Benadryl and Ibuprofen (*Id.*, ¶ 28). On July 16, 2014, Mr. Lewis was allowed an extra mattress (*Id.*, ¶ 29). On July 17, 2014, Dr. Johnson noted to call "ortho" to confirm if an appointment was necessary (*Id.*, ¶ 30). Dr. Johnson also indicated that Mr. Lewis should return to the clinic in two weeks (*Id.*, ¶ 31).

On July 28, 2014, Mr. Lewis filed a sick call and complained of pain despite being seen twice by a doctor (*Id.*, ¶ 32). Mr. Lewis also alleged that mobility in his right arm was restricted, he was out of pain medication, and he needed to see a dentist (*Id.*, ¶ 33).

On July 30, 2014, a nurse noted on the sick call form that Mr. Lewis's collar bone may be broken and directed Mr. Lewis's complaints to a medical doctor for possible referral to an outside orthopedist (*Id.*, ¶ 34). PCRDF received Mr. Lewis's March 2014 medical records from Baptist Health Medical Center the next day (*Id.*, ¶ 35).

On August 15, 2014, Mr. Lewis asked to see a doctor because his pain medication was not working, he was experiencing headaches, and he needed "something" for a cold (*Id.*, ¶ 36). The assessing nurse noted that Mr. Lewis' right clavicle was bulging and referred him to a doctor for further evaluation (*Id.*, ¶ 37).

On August 22, 2014, Mr. Lewis complained of pain in his right collar bone (*Id.*, ¶ 38). A nurse instructed Mr. Lewis to file a sick call form to address the pain in his neck and clavicle (*Id.*, ¶ 39).

On August 25, 2014, Dr. Johnson prescribed Mr. Lewis 600 mg Ibuprofen to be taken three times per day (*Id.*, ¶ 40). PCRDF Progress Notes from August 25, 2014, indicate that Mr. Lewis was evaluated at Baptist Medical Center and his x-rays were "negative – no fracture" (*Id.*, ¶ 41). The PCRDF Progress Notes also indicate that Mr. Lewis has a right clavicle dysfunction that

5

"appears to be chronic and not acute" (*Id.*, ¶ 42). On September 2, 2014, Dr. Johnson wrote Mr. Lewis a 90-day prescription of Robaxin, a muscle relaxant (*Id.*, ¶ 43).

On September 24, 2014, Mr. Lewis filed a sick call and complained his medication was ineffective and he had shoulder and collar bone pain (*Id.*, ¶ 44). The sick call form indicates that the nurse planned to increase Mr. Lewis' Ibuprofen dosage to 800 mg (*Id.*, ¶ 45). On October 1, 2014, Dr. Johnson increased Mr. Lewis' Ibuprofen dosage to 800 mg three times per day for 90 days (*Id.*, ¶ 46).

On December 4, 2014, Mr. Lewis filed another sick call and complained that he was out of medication and that his groin, lower back, and left hip hurt (*Id.*, ¶ 47).[7] On December 9, 2014, Dr. Johnson prescribed Mr. Lewis Gabapentin, renewed his Ibuprofen prescription, and ordered Mr. Lewis to return to the clinic in one week (*Id.*, ¶ 48).

On December 18, 2014, Mr. Lewis filed a sick call and complained of sharp pains in his neck and arm, limited mobility in his arm, and asked to go to the emergency room ((*Id.*, ¶ 49). On December 30, 2014, Dr. Johnson scheduled Mr. Lewis an appointment at the UAMS Orthopedic Clinic (*Id.*, ¶ 50).

On January 13, 2015, Mr. Lewis filed a grievance (*Id.*, ¶ 51). In the grievance, Mr. Lewis stated the following:

> I've been to the doctor here more than 5 times, I'm in more pain now, this is getting worser [sic]. My collar bone is sticking out more, my movement in my right arm is limited, I can hardly lift my arm. [T]he doctor told me I would have to wait until I go home or ADC, I think my time is up. I need to have sergery [sic] ASAP . . . I need to know how much longer it would be before I go to ADC because I need my surgery dunn [sic].

---

[7] Pulaski County erroneously refers to "Davis," but the Court understands from the context of the statement that the intended reference is Mr. Lewis (*Id.*, ¶ 47).

(Dkt. No. 46-1, at 57). PCRDF Grievance Officer Nancy Brawley informed Mr. Lewis that he was scheduled for an outside appointment (Dkt. No. 46, ¶ 53).

On January 15, 2015, Mr. Lewis saw Dr. John L. Wilson at the UAMS Orthopedic Clinic and received x-rays of his shoulder (*Id.*, ¶ 54). Dr. Wilson noted a deformity at the distal end of Mr. Lewis' clavicle and an enlarged medial portion of the clavicle indicative of anterior subluxation (*Id.*, ¶ 55). Dr. Wilson's impression was anterior subluxation of medical sternoclavicular joint on the right and intra-articular fracture, AC joint right distal clavicle, with healing and early arthritis (*Id.*, ¶ 56). Dr. Wilson advised Mr. Lewis that surgery was not indicated at the present time and noted that Mr. Lewis' usage of Ibuprofen for pain was appropriate (*Id.*, ¶ 57). Dr. Wilson further advised Mr. Lewis that surgery on the medical aspect of the clavicle is dangerous and would only be undertaken with marked arthritic changes (*Id.*, ¶ 58).

On January 16, 2015, Mr. Lewis filed a grievance stating that the doctor at UAMS told him he would not perform surgery because "it's too risky [sic]" (*Id.*, ¶ 60). He also stated, "I'm not going to get this dunn [sic] untail [sic] I go too [sic] ADC or I go home" (*Id.*). Mr. Lewis requested transfer to the ADC (*Id.*, ¶ 61). The Health Services Administrator told PCRDF Grievance Officer Brawley that Mr. Lewis had seen a doctor at UAMS and that PCRDF medical personnel would follow UAMS's recommendations (*Id.*, ¶ 62).

On January 29, 2015, Mr. Lewis filed a sick call complaining of pain in his right arm (*Id.*, ¶ 63). Medical personnel noted that Mr. Lewis' treatment plan was to continue Ibuprofen (*Id.*, ¶ 64).

On February 1, 2015, Mr. Lewis filed a grievance indicating that he was diagnosed with a fracture at UAMS and complained of pain since his UAMS appointment (*Id.*, ¶ 65). Mr. Lewis

further complained he had been out of medication since January 9, 2014 (*Id.*, ¶ 66).[8] He requested to see a doctor and to receive his medication (*Id.*, ¶ 67).[9] Dr. Johnson examined Mr. Lewis on February 3, 2015, and prescribed him with Ibuprofen, Gabapentin, and Benadryl (*Id.*, ¶ 69). On February 5, 2015, PCRDF Grievance Officer Sergeant Brawley advised Mr. Lewis that the Health Services Administrator reported Mr. Lewis' medical issues were addressed in the medical clinic on February 3, 2015 (*Id.*, ¶ 70).

Mr. Lewis was transferred to ADC custody on February 5, 2015 (*Id.*, ¶ 71). On October 8, 2015, Mr. Lewis underwent surgery to repair a right shoulder rotator cutoff tear and right shoulder impingement syndrome (*Id.*, ¶ 72).

Mr. Lewis filed his complaint in the instant action on February 20, 2018 (*Id.*, ¶ 73).

**II.     Legal Standard**

    **A.     Summary Judgment**

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UnitedHealth Group Inc. v. Executive Risk Specialty Ins. Co.*, 870 F.3d 856, 861 (8th Cir. 2017) (citing Federal Rule of Civil Procedure 56 and noting that summary judgment is proper if there is no genuine issue of material fact for trial). Under such circumstances, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322. "In ruling on a motion

---

[8] Pulaski County erroneously refers to 2017 in this paragraph, but from the context, the Court understands the intended reference to be 2014 (*Id.*, ¶ 66).

[9] According to Pulaski County, Mr. Lewis' medication administration record shows he received Benadryl, Ibuprofen, and Neurontin (the brand name for Gabapentin) every day of January 2015 (Dkt. No. 46, ¶ 68).

for summary judgment '[t]he district court must base the determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial.'" *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 923 (8th Cir. 2004) (internal citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Johnson Regional Medical Ctr. v. Halterman*, 867 F.3d 1013, 1016 (8th Cir. 2017) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Claims Pursuant To § 1983 And ACRA

A municipality is subject to liability under § 1983 only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social*

*Services*, 436 U.S. 658, 690 (1978). "[A]lthough the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 person, by the very terms of the statute, may be sued for constitutional deprivations violated pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. A plaintiff suing a municipality under § 1983 must include allegations, references, or language by which one could infer the conduct alleged resulted from an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe v. Sch. Dist. of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)).

A policy which does not "affirmatively sanction" unconstitutional action, and which instead relies on the discretion of the municipality's employees, is not an unconstitutional policy. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008); *Dick v. Watonwan Cty*, 738 F.2d 939, 943 (8th Cir. 1984). If a county's policy is facially lawful and does not compel unconstitutional action, the plaintiff has "the high burden of proving that the county's decision to maintain the policy was made with deliberate indifference to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009) (citing *Bd. of the County Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997)). "The standard for deliberate indifference is objective; a government entity is liable if it has maintained 'a policy in which the inadequacy is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights' that the policymakers can be said to have been deliberately indifferent." *Moyle*, 571 F.3d at 818-19 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "A showing of simple or even

heightened negligence will not suffice." *Moyle*, 571 F.3d at 818 (citing *Bryan Cty.*, 520 U.S. at 407).

To the extent that Mr. Lewis brings claims pursuant to the ACRA, the ACRA prohibits persons, acting under color of state law, from depriving any person of any rights, privileges, or immunities secured by the Arkansas Constitution. Ark. Code Ann. § 16-123-105; *see also West v. Atkins*, 487 U.S. 42 (1988). The ACRA expressly requires that courts look to federal civil rights law for guidance. *See Island v. Buena Vista Resort*, 103 S.W.3d 671, 675–76 (Ark. 2003). As a result, this Court determines that its analysis of Mr. Lewis' federal constitutional claims under § 1983 is equally applicable to the state constitutional claims under the ACRA.

### III. Discussion

In his operative amended complaint, Mr. Lewis alleges that, although Pulaski County knew that Mr. Lewis "suffered from a broken collar bone," Pulaski County failed to treat Mr. Lewis for those injuries and otherwise failed to provide proper care (Dkt. No. 25, ¶¶ 16-17). Mr. Lewis alleges that Pulaski County refused to address sufficiently the several grievances that he filed and refused to treat and accommodate him (*Id.*, ¶ 18). Mr. Lewis claims that Pulaski County deprived him of his constitutionally protected rights to due process and rights against cruel and unusual punishment (*Id.*, ¶ 20). He alleges that he formally grieved in writing to Pulaski County, through PCSO and PCRDF, numerous complaints, including that he had "sharp numbing pains" in his neck and left arm, that he could not lift his arm "much at all," that the medications were "not helping," and that he thought he needed to go to the emergency room (*Id.*, ¶ 21). Mr. Lewis further alleges that Pulaski County responded to his complaints by obtaining x-rays and testing that confirmed his injuries, yet they asserted "that their established practice was not to treat such an injury while the


detainee is housed at their facility" and that he would have to wait until he was released or transferred to the ADC (*Id.*, ¶ 22).

Pulaski County maintains that it is entitled to summary judgment because no material issues of fact are in dispute and because Mr. Lewis' claims contain several fatal deficiencies. Pulaski County argues that Mr. Lewis' claims fail for the following reasons: (1) his claims are barred by the applicable statute of limitations; (2) his constitutional rights were not violated by Pulaski County; and (3) even assuming for purposes of summary judgment that a constitutional violation occurred, the alleged violation did not occur pursuant to an unconstitutional custom, policy, or practice of Pulaski County (Dkt. No. 45, at 1). In response, Mr. Lewis does not dispute that Pulaski County's motion for summary judgment "sufficiently sets forth the facts in this case," including the applicability of the three-year statute of limitations period (Dkt. No. 53, at 3). Mr. Lewis avers that Pulaski County's motion for summary judgment should nonetheless be denied because disputed facts remain about Pulaski County's alleged "policy of delaying certain surgeries merely for the convenience of the County and cost-avoidance" (*Id.*, at 5). The Court addresses the parties' arguments.

### A. Statute of Limitations

Mr. Lewis brings this action pursuant to 42 U.S.C. § 1983 and the ACRA. The limitations period for a § 1983 action is governed by the statute of limitations for personal-injury actions in the state in which the claim accrues. *See Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Sanchez v. United States*, 49 F.3d 1329, 1330 (8th Cir. 1995). In Arkansas, the general personal-injury statute of limitations is three years. *See* Ark. Code Ann. § 16-56-105(3). The Eighth Circuit has repeatedly held that this period applies to § 1983 claims brought in Arkansas. *See, e.g., Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992); *Morton v. City of Little Rock*, 934 F.2d

180, 182 (8th Cir. 1991). Arkansas courts also apply a three-year statute of limitations period for claims under the ACRA. *See Hutcherson v. Rutledge*, 533 S.W.3d 77, 80 (Ark. 2017); *Smith v. ConAgra Foods, Inc.*, 431 S.W.3d 200, 203-04 (Ark. 2013).

Although courts look to state law for the length of the limitations period, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[A] plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation."). "The general rule is that a claim accrues at the time of the plaintiff's injury." *Osborn v. United States*, 918 F.2d 724, 731 (8th Cir. 1990) (citing *Wehrman v. United States*, 830 F.2d 1480, 1483 (8th Cir. 1987)).

Pulaski County asserts that because Mr. Lewis' claims are barred by the statute of limitations because Mr. Lewis failed to file his lawsuit within three years of his release from the PCRDF (Dkt. No. 44, ¶ 4). Mr. Lewis does not dispute this argument (Dkt. No. 53, at 4). Pulaski County contends that this "alone is fatal to [Mr. Lewis'] claims" (Dkt. No. 54, at 1).

The Court agrees that the remaining claims in this lawsuit are barred by the statute of limitations. Mr. Lewis' claims against Pulaski County relate to his detention at the PCRDF from July 9, 2014, to February 5, 2015. Mr. Lewis filed his original complaint on February 20, 2018, more than three years after his release from the PCRDF (Dkt. No. 1). Thus, Mr. Lewis' claims are time-barred, and Pulaski County is entitled to summary judgment as a matter of law on all of Mr. Lewis' claims. Even if any of Mr. Lewis' claims were timely filed, which they were not, all of his claims fail for other reasons as explained in this Order.

### B. Constitutional Violations

### 1. Denial Of Medical Care Claims

Mr. Lewis claims that Pulaski County violated his constitutional rights by failing to provide adequate medical care during his detention at the PCRDF from July 9, 2014, to February 5, 2015. Pulaski County argues that, even if these claims were timely, Mr. Lewis cannot prevail. Pulaski County maintains that, based on the undisputed record, Mr. Lewis cannot establish that Pulaski County acted with deliberate indifference to his medical needs or that Pulaski County acted pursuant to "established practice" of deferring inmate's medical treatment until they are released from the PCRDF (Dkt. No. 45, at 8-12). Mr. Lewis argues in response that whether Pulaski County had a "policy of delaying certain surgeries merely for the convenience of the County and cost-avoidance" remains a factual dispute (Dkt. No. 53, at 5).

The constitutional protection that post-conviction inmates be provided with adequate medical care extends to pretrial detainees. *See Corwin v. City of Indep., Mo.*, 829 F.3d 695, 698 (8th Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To establish that a denial of medical care rises to the level of a constitutional violation, an inmate must establish deliberate indifference. *Id.* The test for deliberate indifference consists of two prongs: (1) an inmate must show that he "suffered from an objectively serious medical need," and (2) an inmate must show that the defendant knew of and deliberately disregarded that need. *Schuab v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). "Deliberate disregard is a mental state equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposely causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Id.* at 914-15 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835(1994)); *see also Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018). A medical deliberate indifference claim "requires more than mere

14

disagreement with treatment decisions." *Jones v. Minn. Dep't of Corr.*, 512 F.3d 478, 482 (8th Cir. 2008).

On the record evidence before the Court, with all reasonable inferences construed in favor of Mr. Lewis, the Court cannot conclude that Pulaski County acted with deliberate indifference to Mr. Lewis' medical needs. During the roughly seven-month period that Mr. Lewis was detained at PCRDF, the undisputed facts demonstrate that Mr. Lewis received assessment, treatment, medication, and accommodation for his medical needs in accordance with Pulaski County policy. Dr. Johnson, the Medical Director at the PCRDF, monitored Mr. Lewis' condition and adjusted his pain medications (Dkt. No. 46, ¶¶ 20-21, 25, 28, 30-31, 40-43, 46, 48, 50). The record shows that Mr. Lewis filed several sick call requests and grievance forms, and PCRDF staff responded promptly including multiple visits to outside medical facilities for additional assessment and treatment (Dkt. No. 46, ¶¶ 20-27, 54-58).

Further, to the extent Mr. Lewis alleges that Pulaski County should have ensured that he underwent surgery while in the custody of Pulaski County, Mr. Lewis' claim also fails. The record shows that from July 9, 2014, to February 5, 2015, while in PCRDF custody, Mr. Lewis' condition was evaluated by Dr. Johnson and two outside medical providers. None of these providers recommended surgery. Although Mr. Lewis stated in his deposition that "[t]he doctor advised the deputy who transported me to UAMS that they couldn't perform surgeries on me unless I was released or in ADC custody because it was very dangerous while I was in custody of the state," the record evidence even with all reasonable inferences construed in favor of Mr. Lewis does not support Mr. Lewis' testimony (Dkt. No. 46, ¶ 59). UAMS records from Mr. Lewis' January 15, 2015, appointment indicate the UAMS physician "[a]dvised [] that surgery was not indicated at the present time," and that "surgery on the medial aspect of the clavicle is rather dangerous and

15

would be done only with marked arthritic changes" (*Id.* ¶¶ 57-58). UAMS records also indicate that the physician noted Mr. Lewis was using Ibuprofen for pain, "which is appropriate" (*Id.*). Mr. Lewis provides no further evidence to support his assertion that surgical intervention was medically necessary at that time. Deliberate indifference in this context "requires more than mere disagreement with treatment decisions." *Jones*, 512 F.3d at 482.

Based on the evidence in the record, with all reasonable inferences construed in Mr. Lewis' favor, the Court determines that no reasonable juror could conclude that Pulaski County acted with deliberate indifference to Mr. Lewis' medical needs. Moreover, Mr. Lewis has failed to show through record evidence that a county policy or custom was the moving force behind any alleged constitutional violation.

For all of these reasons, Pulaski County is entitled to judgment as a matter of law on Mr. Lewis' denial of medical care claims.

### 2. Failure To Train Claim

Mr. Lewis also claims that Pulaski County through PCSO "failed to implement or enforce policies that provide adequate training, supervision, and resources to deter or prevent the type of conduct complained of in this lawsuit" (Dkt. No. 25, ¶ 28). Mr. Lewis also alleges that Pulaski County through PCSO is responsible because acts were taken "consistent with the widespread custom and practice of ignoring the valid complaints of inmates in order to save money on healthcare costs" (*Id.*, ¶ 30). Pulaski County argues that Mr. Lewis' failure to train claim fails first because it is untimely. Further, even if timely, Pulaski County argues that the claim fails because there was no underlying constitutional violation and because Pulaski County employees, pursuant to their training, ensured that Mr. Lewis received proper medical evaluation and responded to his medical needs (Dkt. No. 45, at 12-13).

16

Failure to train claims require proof that: (1) the municipality's practices were inadequate; (2) the municipality was deliberately indifferent to the rights of others in adopting the procedures, such that the municipality's failure to train reflects a deliberate or conscious choice by the municipality; and (3) the alleged deficiency in training practices actually caused the plaintiff's injury. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). To prevail, the plaintiff must prove that the need for more or different training or hiring procedures was so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymaker of the municipality can reasonably be said to have been deliberately indifferent to the need. *Id.* Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness. *Id.* (citing *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004)). The plaintiff must also demonstrate that the municipality had notice that its procedures were inadequate and likely to result in a violation of constitutional rights. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (internal quotation and citation omitted). An isolated violation by one who is not a final policy maker is insufficient to establish a municipal policy or custom. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

The record is undisputed that in 2014 and 2015 Pulaski County policy required the provision of health care services to inmates at PCRDF (Dkt. No. 46, ¶ 6). The record demonstrates that Mr. Lewis routinely filed sick calls and that his complaints were addressed by medical professionals, including medical doctors, registered nurses, and other trained healthcare professionals (Dkt. No. 46, ¶¶ 19-22, 28-29, 37, 39, 45-47, 49). Mr. Lewis offers no evidence besides his own testimony to support his assertion that Pulaski County had an "established practice" of deferring treatment of inmates' injuries until they are released from PCRDF.

The Court concludes that Mr. Lewis has failed to show through record evidence that a purported failure to train or supervise on the part of Pulaski County led to the events about which he complains. Mr. Lewis also has failed to show through record evidence that a County policy or custom was the moving force behind any alleged constitutional violation.

For all of these reasons, Pulaski County is entitled to judgment as a matter of law on Mr. Lewis' failure to train claims.

### C.     Remaining Claims

Pulaski County maintains that, to the extent Mr. Lewis brings claims for excessive force and unreasonable seizure, Mr. Lewis has failed to establish any factual basis for such claims (Dkt. No. 45, at 14). Mr. Lewis does not respond to this argument in his response to Pulaski County's motion for summary judgment. The Court hereby construes the lack of a response as conceding the argument. *Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009). To the extent that Mr. Lewis contends Pulaski County's actions constituted excessive force and unreasonable seizure, and to the extent those claims were not dismissed by this Court's February 14, 2019, Order, Pulaski County is entitled to summary judgment on the claims.

### IV.    Conclusion

For these reasons, the Court grants Pulaski County's motion for summary judgment on Mr. Lewis's claims and dismisses with prejudice those claims (Dkt. No. 44). The request for relief is denied. The Court dismisses without prejudice Mr. Lewis' claims against the John Doe defendants. The Court removes this case from the April 24, 2022, trial calendar. Judgment will be entered accordingly.

It is so ordered this 31st day of March, 2022.

_____
Kristine G. Baker
United States District Judge